WILLARD E. EDDY *vs.* THOMAS H. CLARKE, T. T.

DECEMBER 3, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Towns.   Highways.   Boundaries.*

Where a road upon which an accident happened through a defect therein, was named as a boundary of a highway district as defined by a town council, it does not tend to show that the town had assumed responsibility for its repair, since a road so named as a boundary might as well be a private way as a public highway.

*(2)   Towns.   Highways.   Defects in Highways.   Description.*

The boundaries of a highway district as defined by a town council were stated as "Beginning at Edmund's corner, thence westerly across Natick bridge to the old turn-pike at T's blacksmith shop, thence on *Natick Hill Road,* to the road leading past the B. farm to the Cranston line.   Also said turn-pike road from the X. R. R. at W. through N. to the Cranston line.   Also the road from the gate road northerly by W's house to the road leading from N. to Edmund's corner."

Pub. Stat. of 1882, cap  65, § 2, required the town council to "assign and appoint in writing annually to the surveyors, their several limits and divisions of the highways for repair and amendments."

*Held,* that, while not clear the description as a whole might be taken as intended to point out the highways making up the district, and therefore, including Natick Hill road among them, and so the record was admissible as showing an assumption of responsibility by the town over the road, although its admission might require suitable instructions from the court as to its evidentiary significance.

*(3)   Highways.   Dedication.*

Where there is no testimony of any formal act of dedication, if a road be a highway by dedication it is such by virtue of the presumption of dedication arising from continued user.

*(4)   Highways.   "According to the Course of the Common Law."*

Gen. Laws, 1909, cap. 82 provides, § 26:   "Nothing in this chapter shall be construed to hinder or prevent the public from acquiring by dedication or user lands—for highways—according to the course of the common law."

Sec. 27.   "Nothing in the preceding section shall be construed to render any town liable for the mending and repairing of any highway, unless the same shall have been declared to be a public highway by the town council of the town wherein it lies."

*Held,* that under these provisions the obligation on the part of the town to repair a highway acquired by the public by user or dedication, was left to be ascertained or proved independently of the fact of dedication or user, two facts being necessary to establish such liability, first, immemorial use and second, the making of repairs as evidence of an acceptance by the town.

*(5)   Highways.   Dedication or User.*

To create a public way by use, the proof must show that the use has been general, uninterrupted, continuous and adverse so as to warrant the inference that it had been laid out, appropriated or dedicated by the proprietors of the adjoining land to the public.   An occasional use by a few persons living in the neighborhood without any assertion of public right is not sufficient, and the use of a road by the abutters thereon without any indication of a claim of public right in so doing, is as consistent with the exercise of a right appurtenant to their estates or with permission, as with a claim of public right.                                                                 ‫ل‬

*(6)   Highways.   Dedication.   User.   Repairs.*

Under the common law the existence of a public highway cannot be established by evidence of repair alone.

*(7)   Highways.   Highway Districts.   Evidence.*

Where proof of the creation of a public way by immemorial use is lacking, the action of a town council in including the way in the limits of a highway district, in itself shows neither use nor repair of the road; nor can it be treated as a declaration by the council that the road was a highway in the absence of long continued public use prior to that time.

*Semble:*   Even if repair of a road for 14 years were to be taken as proof of a public use of the way, it would not satisfy the requirement of the immemorial use from which a dedication can be inferred.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant and sustained.

BAKER, J. This is an action to recover damages for injuries to plaintiff's automobile caused by a defect in a certain way in the town of West Warwick, which is alleged to be a public highway and one which said town was bound to keep in repair.

The case was tried in March, 1915, and at the trial defendant offered no testimony. A verdict was rendered in favor of plaintiff and the damages were assessed at $300. The defendant made a motion for a new trial which was denied and he has duly brought the case here on his bill of exceptions.

The bill contains thirteen exceptions, but as the defendant states in his brief that he relies on exceptions numbered eleven and thirteen, he will be held to have waived all the other exceptions.

The eleventh exception was taken to the ruling of the court permitting the introduction in evidence of a paper marked "Plaintiff's Exhibit C." The exhibit was certified to by the town clerk of Warwick as a "true copy of the record of the boundaries of highway district No. 6, as defined by the town council of said Warwick on the 27th day of June, 1892." The accident was alleged in the declaration to have been caused by a defect in a certain public highway called Bay View Avenue. Several witnesses had testified to the existence of the defect and that the defect caused the injury. Two witnesses said that Bay View Avenue until a short time before the accident had always been known as Natick Hill Road. The witness, Greene, who had lived in Warwick fifty years, was a surveyor, and was familiar with the records of the old town of Warwick and with the way in question before it was called Bay View Avenue, testified that the "highway . . . called Bay View Avenue is within the limits of the highway district" number six. The paper was offered as tending to show by record evidence, in addition to the evidence of repair already in the case, that Warwick by act of the town council had assumed responsibility as early as 1892 for the repair of this road.

"Exhibit C" is as follows: "No. 6. Beginning at Edmund's corner, thence westerly across Natick lower bridge to the old turn-pike at Joseph O. Tillinghast's blacksmith shop; thence on Natick Hill road to the road leading past the Baker farm to the Cranston line. Also said turn-pike road from the N. Y. & N. E. R. R. at Westcott through Natick to the Cranston line. Also the road from the gate road northerly by Job Whipple's house to the road leading from Natick to Edmund's corner." If this description is to be taken as giving the boundaries of an enclosed highway district as the town clerk's certificate implies, it would of necessity throw no light on the point as to which it was offered, inasmuch as a road named as a boundary of an enclosed section could as well be a private way as a public highway. But if the description is to be construed as simply a designation of the highways constituting a highway district then it would be relevant evidence on the point for which it was offered. There was no oral testimony to show its interpretation in practice by the town.

The description, at first impression, is not entirely clear as to its meaning. The language of the first sentence is apt for the description of a boundary enclosing an area. But the failure to extend the apparent boundary line to the point of beginning, and the reference in the two remaining sentences to two roads by name or description make it possible to reasonably urge that the description taken as a whole is intended to point out the roads or highways which make up the highway district. In this view the words "thence on Natick Hill Road" would be equivalent to naming such road as one of the highways comprising district number six. In this connection it may be noted that in 1892 there was no statutory provision for the division of a town into highway districts as has been the case since 1895. Section 2 of Chapter 65 of the Public Statutes of 1882, required the town council to "assign and appoint, in writing, annually, to the surveyors, their several limits and divisions of the highways for repair and amendments." In these circum-

stances we do not find that the court erred in admitting "Exhibit C" in evidence, although its admission might require suitable instructions from the court as to its evidentiary significance.

The eleventh exception is accordingly overruled.

The thirteenth exception was taken to the denial of defendant's motion for a new trial. The defendant rests this exception on the claim that "there is no proof in this case of the establishment of a highway under the statutes," and that "the plaintiff has not met the burden required by the common law," to show that Bay View Avenue, formerly Natick Hill Road, is a public highway. At the trial no attempt was made to show the establishment of the way in question as a highway under the special statutory provisions; for example, by act of the town council in laying it out, or in declaring it to be such after twenty years use, or by conveyance to the town by the owner or owners for the purposes of a public highway. Therefore, if it be a highway, it is such by virtue of "dedication or user" under "the course of the common law." See Section 26 of Chapter 82 of the General Laws.

(3)     There is no testimony as to any formal act of dedication. If the road be a highway by dedication, it is such by virtue of the presumption of dedication arising from continued user. The entire testimony as to the use of Bay View Avenue prior to just before the accident on September 4th, 1914, is in brief as follows: One witness, who had lived on that road twenty-eight or thirty years, said that he drove over that highway to get to his home; another witness, who had lived twenty-six years on the road, said "I have traveled that road between three and four times a day every day for twenty-six years." In addition to the foregoing, testimony was offered as to its use about the time of the accident, as follows: A witness had lived twenty-eight years on a "farm located on this street." He testified however to using it only on September 4th, 1914, and then as an occupant of the automobile which was injured.

A contractor doing mason work at the Natick school, on or about September 4th, 1914, stated that while working on this contract his teams had been going up and down Bay View Avenue; another witness had gone up this road to Natick Hill on September 4th to collect a bill from some one, and still another witness had seen shortly before the date last mentioned an automobile truck in the hole which plaintiff claimed caused the accident to his machine. No inquiry was made of any one of these witnesses as to whether or not this avenue or road had been used by the public and they (except the witness last referred to) respectively testified only to use by themselves. This is all the testimony showing the use of this road.

Besides this, however, testimony was introduced as to its repair, first by the town of Warwick before its division in 1912, and after that by the town of West Warwick in which it is now located. The road is a dirt road without gutters or sidewalks, with a traveled portion for carriages about five feet in width. Several witnesses who had held the office of surveyor of highways in one or both of these towns testified to repairing this road in the discharge of their duties as such surveyors and that the towns paid for such repairs. This was definitely shown to have been done, not continuously, but for several years from 1900 down to the time of and immediately after the accident to the plaintiff's machine. In this connection plaintiff's "Exhibit C" may also be considered.

It remains to determine the legal significance of this evidence. There have been several cases in this state in which the court has passed upon the question of what is necessary to be shown to establish a road or way as a highway "according to the course of the common law." In *Hughes* v. *The Providence and Worcester R. R. Co.*, 2 R. I. 493 (1853), a certain way in Providence called Back Street had been open "and traveled in its whole length as a public street for nearly fifty years." During this period of use it had actually been dedicated as a highway which dedication had been

preceded and followed by a public use "so long continued as of itself to furnish just grounds for an implied dedication." This street, however, had never been repaired by the city authorities, and the question of the liability to repair it was not involved in the case. Back Street was held upon this evidence to be a public street or highway.

In *State* v. *Town of Cumberland*, 6 R. I. 496 (1860), it was necessary to show that a certain way was a public highway by user according to the course of the common law and that the town was liable for its repair. It was there held that proof that a way "had been immemorially used by the public as a highway and had been immemorially repaired by the town" was sufficient at common law "to establish the existence of the highway and the liability to keep it in repair." The question had been raised by the defendant that, if the way in question was a highway only by user, although it might have been repaired by the town from time immemorial, the town nevertheless was not liable for repair, unless it were shown that the way had been declared a highway by the town council. Reliance for this claim was placed on Section 25 of Chapter 43 of the Revised Statutes of 1857, which section and Section 24 the court in its opinion considered and construed.

These sections are now sections 26 and 27 of Chapter 82 of the General Laws of 1909, as altered by a certain slight and unimportant verbal changes. So far as it is necessary to cite said sections 24 and 25 for present purposes they are as follows: "Sec. 24. Nothing in this chapter contained shall be construed to hinder or prevent the public from acquiring, by dedication or user, lands  .  .  .  for highways  .  .  .  according to the course of the common law." "Sec. 25. Nothing in the preceding section contained shall be construed to render any town liable for the mending and repairing of any highway, unless the same shall have been declared to be a public highway by the town council of the town wherein it lies."

(4)     The court held Section 24 to be an affirmance of the common law and that Section 25 referred only to the preceding section, saying, "Its purpose is to rebut any inference that might arise from establishing a right of highway in the public by user or dedication, with regard to the duty of the town to repair. The obligation on the part of the town is left to be ascertained or proved, independently of the 24th section. Section 25 does not profess to relate to any other part of the statute, or to the common law obligations of the towns. At common law, although there may be a right established by use by the public of lands dedicated to the public use, the liability to repair will not be created unless by some act of acquiescence or adoption. See 2 Greenleaf on Evidence, 552." (Sec. 662) . . . "No change is made in the law affecting the liability of the towns to repair and amend the highways, as existing by force of the statutes, or as arising under the common law. The highway in question was established as a public highway by use; and the town, by immemorial repairs, had recognized and fixed its liability long before this statute was passed. We do not think it was the intent of the statute to change the common law in this respect."

In *Hampson* v. *Taylor*, 15 R. I. 83 (1885), it was necessary to prove the existence of a highway and the duty to repair it at common law. The court cites the rule of proof laid down in the last case, and on page 88 in referring to the evidence in the case under consideration says: "The testimony cited tended to show immemorial use, which is one step in the proof required; and, though the record does not show that any evidence was offered to prove that the town had assumed the burden of repair by repairing, which was the next step, it may be presumed that such proof was not insisted on, since no exception was taken to the want of it. At any rate, as no such exception was taken, we cannot consider the want of it here." See, also, *Stone* v. *Langworthy*, 20 R. I. 602, and Dillon's Municipal Corporations, 4th ed. Vol. 2, Sec. 642.

These cases show that proof of immemorial or long continued public use is essential to establish the existence of a public way at common law and that the making of repairs is evidence of the acceptance by a town of the highway so established by public use. *State* v. *Cumberland, supra,* clearly differentiates the function of the two classes of testimony. That these cases correctly state the law has never been denied or questioned by this court. *Perry* v. *Sheldon,* 30 R. I. 426 and *Cole* v. *Barber,* 33 R. I. 414, cited by the plaintiff contain nothing inconsistent with the doctrine of the earlier cases, as in these later cases there was testimony tending to show either a layout or a dedication and evidence of a long continued public use and of repairs by the town.

(5)    In this case we have then, on the question of the use of Bay View Avenue, formerly Natick Hill Road, prior to about the time of the accident, evidence of use for more than twenty years by two persons, who during all this time resided on said road, and in addition proof of its use by a few other persons about the time of the accident. But "to create a public way by use the proof must show that the use has been general, uninterrupted, continuous and adverse so as to warrant the inference that it had been laid out, appropriated, or dedicated by the proprietors of the adjoining land to the public." Jones on Easements, Sec. 461; Elliot on Roads and Streets, 3d ed. Vol. 1, Sec. 194. "An occasional use by a few persons living in the neighborhood without any assertion of public right is not sufficient." 22 Am. & Eng. Ency, L. 1221. "The word 'public' as used in this connection means all those who have occasion to use the road." 37 Cyc. 21.

From the use of this road by the abutters thereon without any indication of a claim of public right in so doing it is at least as reasonable to infer that they were in the exercise of a right as appurtenant to their respective estates on the road, or were using it by permission, as that they were doing so under a claim of public right. Taking their testi-

mony out nothing remains but some slight evidence of use about the time of the accident, so that the evidence as a whole falls far short of showing the immemorial or long continued use necessary to establish it as a public highway. In fact it may be said that there was no attempt worthy of the name to show a public use of the way at all.

(6)   With the failure of proof to show the establishment of this road as a highway by public use, what is the significance of the testimony in the case as to the repairs of the road by the town authorities ? If its only function is to show the acceptance of a way established as a highway by use then in this case it has no importance. Under certain conditions, as when there has been proof of long continued use, it is conceivable that evidence of long continued repair, in addition to being proof of acceptance, may be regarded as tending to corroborate the evidence of public use. In this connection see 37 Cyc. 30. But examination has revealed no case which shows that under the common law the existence of a public highway may be established by evidence of repair alone, and this is natural for use precedes and creates the necessity for repairs. There are statutory provisions, however, in some states declaring a way a highway on proof of its repair for a definite period. 37 Cyc. 31. There are also textwriters and courts, differing from the doctrine recognized in this state, that hold that mere user by the public may be a sufficient acceptance of a highway so as to render a municipal corporation liable for its repair. See Elliott on Roads and Streets, Vol. 1, Sec. 171. It is so held in Connecticut in *Green* v. *Canaan*, 29 Conn. 157 and *Guthrie* v. *New Haven*, 31 Conn. 308. On page 164 of *Green* v. *Canaan, supra*, the court, in referring to the duties of towns in relation to highways, says: "They are bound to repair highways already established, but have no power to establish them by their repairs." This case is interesting in that the court (then consisting of four) divided equally, one-half in support of the view last stated, the other half in support of the view as held by this court in *State* v. *Cumberland, supra*.

But even if the repair of this road for fourteen years from 1900 to 1914 were to be taken as proof of a public use of the way, it cannot be held to satisfy the requirement of the immemorial or long continued use from which a dedication can be inferred. The view generally taken by American courts is " that without some clear and unequivocal manifestations of an intention to dedicate, dedication would not be presumed until after the lapse of twenty years." Angell on Highways, 3d ed. Sec. 143. In view of the fact that authority is only conferred upon town councils by Section 18 of Chapter 82 of the General Laws to declare lands public highways "which have been . . . actually used and improved and considered as public highways for the space of twenty years" certainly no period shorter than that of repairing a way by their authority can be held as satisfying the requirements of an immemorial or long continued use under the common law to justify the recognition of such way as a public highway.

(7)    Construed most favorably to the plaintiff the action of the town council of Warwick in June, 1892, is to be taken as an attempt to exercise control of Natick Hill Road. By itself it shows neither use nor repair of the road. If it be urged that such action was tantamount to a declaration by the town council that said road was a highway, it can be given no weight in the establishment of that declaration as a fact in the absence of any evidence of a long continued public use of the way prior to 1892. In *Remington* v. *Millerd,* 1 R. I. 93, the declaration by a town council that a certain way was an open highway was held to be without binding force unless the way had been actually used as a highway for twenty years. There is, therefore, practically no testimony showing that in 1914 Bay View Avenue, formerly Natick Hill Road, had been a public highway by user. Nor, for the reasons already indicated, is the evidence of repairing the road by town officials at different times, between 1900 and 1914, if considered as tending to show user, sufficient with the meagre evidence as to its actual use, as shown by the testi-

mony, to prove a highway by user, or the liability of the town for its repair.

The exception to the denial of the motion for a new trial is therefore sustained.

The paper marked "Plaintiff's 'Exhibit A for identification," referring to a way over Natick Hill existing in 1845, which was excluded when offered, if identified by appropriate oral or other testimony as referring to Bay View Avenue as it now exists, so as to render the exhibit admissible, and accompanied by evidence of public use of said avenue, which it seems not improbable that inquiry of the residents living on the road, as well as others, might elicit, rather strongly indicates the possibility of establishing the existence of the road or avenue as a public highway.

Therefore, it seems to us, considering the whole record, that the ends of justice will be better served by sending the case back for a new trial instead of requiring the plaintiff to show cause in accordance with Section 22 of Chapter 298 of the General Laws, as the defendant in his brief suggests.

The case is remitted to the Superior Court for a new trial.

*Lester T. Murphy*, for plaintiff.

*John F. Murphy*, for defendant.