WARWICK HOUSING AUTHORITY

v.

Barbara McLEOD.

No. 2005–323–A.

Supreme Court of Rhode Island.

Jan. 18, 2007.

---

K. Joseph Shekarchi, Esq., Susan A. Chiariello, Esq., for Plaintiff.

Tiffany Antoch Emery, Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Barbara McLeod (defendant or McLeod) appeals from a judgment of the Superior Court in favor of the Warwick Housing Authority (WHA or plaintiff) evicting her from her apartment in Meadowbrook Terrace, a subsidized housing complex in Warwick. The defendant contends that because WHA, after giving her notice of termination, continued to accept rent without preserving its right to terminate the lease, was thereby precluded from pursuing the ejectment action and that the motion to dismiss should have been granted by the trial court. The WHA counters that because McLeod was aware of the eviction proceedings against her, it was entitled to accept her rent without reservation. The trial justice agreed with WHA and entered judgment for the plaintiff. McLeod has timely appealed. This case came before the Supreme Court for oral argument on December 4, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and we proceed to decide the appeal at this time without further briefing or argument. For the reasons stated in this opinion, we reverse the judgment of the Superior Court.

## I

### Facts and Procedural History

In 1996, McLeod began living in Meadowbrook Terrace, one of several Warwick facilities providing subsidized housing pri-

marily for elderly residents. In 2002, the administrators of WHA began to receive complaints regarding McLeod's son, Mark Anthony (Anthony). Specifically, other residents of Meadowbrook Terrace reported to the executive director of WHA, Michael Lyckland (Lyckland), as well as to other employees of WHA, that Anthony was living with McLeod, which, if true, would constitute a violation of her rental agreement. Because of those complaints, Lyckland instructed his director of maintenance, Everett O'Donnell, to investigate whether Anthony was, in fact, living in the apartment. O'Donnell's investigation led him to believe that Anthony was indeed residing with McLeod. However, WHA never cited Anthony's residence in the apartment as a cause for the termination of McLeod's lease.

On January 4, 2005, the Warwick police were called to McLeod's apartment, where they arrested Anthony for first-degree sexual assault and domestic simple assault and battery on his ex-wife, who was visiting Anthony. Anthony gave a statement to the police in which he said his address was McLeod's Meadowbrook Terrace apartment. From the record, it does not appear that McLeod was at home when the violent assault took place. Nonetheless, on January 8, WHA sent McLeod a notice that her rental agreement would be terminated on January 31 because of her son's criminal activity in the apartment. Notwithstanding the notice, however, McLeod paid her rent for February, and WHA accepted it without reservation.

On February 2, 2005, McLeod was sent a second letter notifying her that her rent-al agreement was terminated, this time as of February 28, 2005. The violation of the rental agreement cited in this notice was that McLeod herself had pled *nolo contendere* to an identity fraud charge on November 17, 2004. This, according to WHA, violated another term of her rental agreement.[1] Still, McLeod paid the rent due on March 3, 2005; significantly, she has continued to pay her rent since, which has been unconditionally accepted by WHA while this litigation has been pending.

WHA filed a complaint for eviction in the District Court on February 24, 2005, and the agency obtained a judgment against McLeod on June 7, 2005. The defendant exercised her right to a trial *de novo*[2] in the Superior Court by filing a notice of appeal on June 10, 2005. That court conducted a nonjury trial on September 9, 2005. At the conclusion of the trial, the trial justice rendered a bench decision and judgment was again entered in favor of WHA.

During the trial, WHA presented evidence on two issues that it said entitled it to judgment for possession of the premises: (1) that McLeod violated her rental agreement, and (2) that McLeod was aware, at all relevant times, that WHA was prosecuting an eviction action against her. The defendant, on the other hand, argued that the eviction action must be dismissed pursuant to G.L.1956 § 34–18–41. That section of the Residential Landlord and Tenant Act, chapter 18 of title 34, sets out the circumstances in which a land-

---

1. Article VI, § 6.1(12) of the rental agreement says that it is the obligation of the tenant "[t]o assure that the Tenant * * * shall not engage in: a. Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the Authority's public housing premises by other residents * * *."

2. All actions under the Residential Landlord and Tenant Act are subject to a *de novo* appeal in the Superior Court according to G.L. 1956 § 9–12–10.1.

lord waives the right to terminate a lease by accepting rent:

"Acceptance of rent with knowledge of a default by the tenant or acceptance of performance by him or her that varies from the terms of the rental agreement constitutes a waiver of the landlord's right to terminate the rental agreement for that breach, *unless the landlord gives written notice within ten (10) days.* However, acceptance of partial payment of rent shall not constitute a waiver of the balance due. Acceptance does not waive the landlord's right to seek remedies for the default." Section 34–18–41. (Emphasis added.)

McLeod argued before the trial justice that WHA waived its right to terminate her lease because it continued to accept her rent without written reservation after discovering her breach of the rental agreement—that breach being either her son's criminal activity or her own plea to a criminal offense.[3]

At the outset of the trial, the trial justice said that § 34–18–14,[4] a general notice provision, "specif[ies] that a person has notice of a fact if he or she has actual knowledge of it, has received notification, or from all facts and circumstances known to him or her at the time in question he or she has reason to know that it exists." Relying on that statute, the trial justice reasoned that if the testimony showed that McLeod had notice of WHA's continuing efforts to evict her, she would deny defendant's motion to dismiss the action despite the language of § 34–18–41.

At the conclusion of the testimony, the trial justice found that there was an abundance of credible evidence that Anthony was living in the apartment[5] in violation of the rental agreement, and that McLeod was given adequate notice that she would be evicted. As a result, the trial justice denied McLeod's motion to dismiss pursuant to § 34–18–41, and she entered judgment for plaintiff.

## II

### Standard of Review

 Questions of statutory interpretation are reviewed *de novo. East Bay Community Development Corp. v. Zoning Board of Review of Barrington,* 901 A.2d 1136, 1152 (R.I.2006). When a specific statute conflicts with a general statute, our law dictates that precedence must be given

---

3. It is fairly debatable whether either of these incidents would qualify as a breach of her rental agreement. In the notices sent from WHA to McLeod, WHA hinges the breach on the language of G.L.1956 § 34–18–24(7), which requires a tenant to "Conduct himself or herself, and require other persons on the premises with his or her consent to conduct themselves, in a manner that will not disturb his or her neighbors' peaceful enjoyment of the premises." There is no dispute that McLeod was not at home when her son allegedly assaulted his ex-wife. Also, there is no indication in the record that the victims of McLeod's identity fraud offenses were residents of Meadowbrook Terrace.

Although it is questionable whether either of the offenses cited would breach the tenant's obligation under the statute, we decide this case on other grounds and need not address those questions.

4. Section 34–18–14(a) reads:

"(1) A person has notice of a fact if:

"(i) He or she has actual knowledge of it;

"(ii) He or she has received a notice or notification of it; or

"(iii) From all the facts and circumstances known to him or her at the time in question he or she has reason to know that it exists.

"(2) A person 'knows' or 'has knowledge' of a fact if he or she has actual knowledge of it."

5. Notably, the fact of Anthony living in the apartment was never provided as a reason for termination of the rental agreement in the notices sent to McLeod by WHA.

to the specific statute. *Wilkinson v. State Crime Laboratory Commission,* 788 A.2d 1129, 1136 (R.I.2002). Furthermore, arguments not made before the Superior Court are deemed waived, under our well-settled "raise or waive" rule, and will not be considered by this Court. *Narragansett Electric Co. v. Carbone,* 898 A.2d 87, 101 (R.I. 2006).

### III

### Analysis

On appeal, defendant reasserts her argument that § 34–18–41 barred WHA from pursuing this eviction action because it accepted rent from her after it had given notice of her breach of the rental agreement, and it did not give her written notice of its intention to continue termination proceedings for that breach. Conversely, WHA asks us to uphold the judgment of the Superior Court because defendant had notice under § 34–18–14. It also presses,

6. Section 34–18–36(f), as amended by P.L. 1996, ch. 358, § 1, sets out the circumstances in which notice of the intent to pursue an eviction action is not required as follows:

 "If the tenant has violated *§ 34–18–24(8), (9), or (10),* or if the tenant (i) is a seasonal tenant occupying the premises pursuant to a written lease agreement which commences no earlier than May 1st of the occupation year and expires no later than October 15th of the occupation year, with no right of renewal or extension beyond the above dates; and (ii) has been charged with violating a municipal ordinance or has otherwise violated the terms of the rental agreement pertaining to legal occupancy or excessive noise or other disturbance of the peace, the landlord shall not be required to send a notice of noncompliance to the tenant and may immediately file a complaint for eviction in a form substantially similar to that provided in *§ 34–18–56(e)* and seek the relief set forth in subsection (d)."

7. Section 34–18–24(10) reads:

 "A tenant shall:

for the first time, two additional arguments. First, it urges that a term of McLeod's rental agreement that says that the waiver by a landlord of one breach does not constitute waiver of another breach abrogates the effects of § 34–18–41. Second, WHA contends that a separate statute, G.L.1956 § 34–18–36(f), as amended by P.L.1996, ch. 358, § 1,[6] frees it from a notice requirement because McLeod's tenancy was terminated for a crime of violence, bringing the matter within the provisions of § 34–18–24(10).[7]

We first address the two new arguments raised by WHA in its pre-briefing statement to this Court. The record reveals that neither contention was made at the trial. Under our well-established "raise or waive" rule, we will not consider arguments that were not made before the trial court. *Carbone,* 898 A.2d at 101. Therefore, these arguments are not properly before this Court, and we will not consider them.[8]

"* * *

"(10) Refrain from any crime of violence on the premises or on any public property adjacent to said premises. A 'crime of violence' means and includes any of the following crimes or an attempt to commit any of the following crimes; murder, manslaughter, arson, rape, sexual assault, mayhem, kidnapping, assault with a dangerous weapon, assault or battery involving grave bodily injury, and a felony assault with intent to commit any offense."

8. We do note, however, that neither argument is persuasive. The waiver provision in the lease is inapposite in that it states that waiver of one breach of the lease agreement does not constitute waiver of another breach. In this case, there is no new breach that WHA cites as the reason for termination. The only breaches alleged are those of which WHA was aware even though it continued to accept rental payments from McLeod without written reservation.

 Second, the assertion that notice is waived because McLeod's lease was terminated for a crime of violence under § 34–18–24(10) is

The question remains, however: is a landlord who is aware that a tenant is in breach of a rental agreement estopped from pursuing an eviction action against a tenant for that breach if he accepts rent without a written reservation of that right, even though the tenant has actual notice of the pending eviction action?

A review of our case law reveals that before the 1986 enactment of the Residential Landlord and Tenant Act we held consistently that a landlord is under a duty to refrain from accepting rent from a tenant when pursuing an eviction action for breach of a rental agreement. As early as 1896, we held that a landlord who accepts rent after learning of a breach waives his right to pursue eviction for that breach. *Smith v. Edgewood Casino Club*, 19 R.I. 628, 629–30, 35 A. 884, 884–85 (1896) (when tenant sublet premises in violation of lease agreement, accepting rent after learning of the breach constituted a ratification of the sublease). Time and again we have reiterated the principle that acceptance of rental payments precluded a landlord from pursuing eviction actions. *See, e.g., Cardi v. Amoriggi Sea Foods, Inc.* 468 A.2d 1223, 1226 (R.I.1983) (acceptance of the rent, unconditionally, rendered the waiver of the right to pursue eviction for the breach unconditional); *Bove v. Kates Properties, Inc.* 444 A.2d 193, 195 (R.I.1982) (because rent was accepted while the action was pending in District Court, the right to pursue eviction for the breach was waived by the landlord).

■ Since the time these cases were decided, the General Assembly passed the Residential Landlord and Tenant Act.

The act is carefully crafted and balances the rights of landlords and tenants. Section 34–18–41 is crystal clear in requiring that the landlord give written notice of his intention to continue termination proceedings to the tenant within ten days of accepting rent. Failure to provide that notice results in the waiver of the right to terminate for any breach of the rental agreement of which he has knowledge. The pellucid wording of this statute is, in essence, a codification of the rule that existed at common law that deemed a landlord's unqualified acceptance of rent to be a waiver of any breach of which he was aware.

■ *Bove* is particularly relevant to the case now before us because, as in this case, an action was pending in the District Court when the landlord accepted rent. *Bove*, 444 A.2d at 195. Part of WHA's argument in this case is that the court notices sent to McLeod provided her with notice. However, those same notices were present in *Bove*, but they did not insulate the landlord from being deemed to have waived his right to terminate because of the breach. *Id.*

In our opinion, the trial justice committed an error of law when she held that the general notice provision, § 34–18–14, trumped the very specific wording of § 34–18–41, simply because McLeod knew that the eviction action was pending. We fail to see how § 34–18–41 could be more unequivocal in its command that written notice of the landlord's intention to terminate the lease is required within ten days of accepting rent. Furthermore, § 34–18–41

perplexing in that WHA did not invoke that section of the statute when it notified McLeod of the impending termination of her lease in either the letter of January 8, 2005 or February 3, 2005. Therefore, even if the notice-waived, fast-track eviction procedures of § 34–18–36(f) would abrogate the notice re-

quirements of § 34–18–41 when rent is accepted (and we express no opinion on that issue here) those procedures could not apply, because there is no allegation that McLeod herself committed a crime of violence in her apartment, or that she had knowledge of her son's assault on his ex-wife.

is a specific statute that refers only to situations in which a landlord accepts rent after giving notice of breach of the rental agreement. On the other hand, § 34–18–14 is general in nature and defines the term "notice" as it is used throughout the chapter. It cannot be used to override other sections that call for a particular form of notice. It is axiomatic that when a specific statute clashes with a general statute, and the two cannot be harmonized, the specific statute takes precedence. *Wilkinson*, 788 A.2d at 1136. Section 34–18–41 is the specific statute in this instance, and, therefore, its mandate cannot be overcome by reference to the general notice statute. Without doubt, the plain language of § 34–18–41 obliges the landlord to give written notice to the tenant if he intends to continue termination procedures within ten days of accepting the payment of rent.

Therefore, we hold that § 34–18–41 clearly and unambiguously says that a landlord waives the right to terminate for a breach of which he has notice when he accepts rent unless he reserves his right to terminate for that breach in writing within ten days. This is so even when there is an action pending. *See Bove*, 444 A.2d at 195. Here, WHA sent McLeod two separate termination notices, one on January 8, 2005, and the other on February 2, 2005. Those notices make it clear that WHA alleged that McLeod had breached her rental agreement. Nonetheless, WHA continued to accept rent from McLeod without reserving its right, in writing, to terminate her tenancy for those breaches. Thus, WHA was precluded from pursuing the eviction action against McLeod.

## IV

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is reversed. We remand the case to the Superior Court with instructions to grant the defendant's motion to dismiss and enter judgment for the defendant.